**Melody Edwardsen PHILLIPS, Plaintiff–Appellant,**

v.

**SARATOGA HARNESS RACING, INC., Defendant–Appellee.**

**No. 00–7518.**

United States Court of Appeals, Second Circuit.

Submitted Nov. 30, 2000.

Decided Feb. 20, 2001.

---

Mary Beth Hynes, The Law Office of Mary Beth Hynes, Halfmoon, NY, for Plaintiff–Appellant.

Randall J. Ezick, Featherstonhaugh, Conway, Wiley & Clyne, LLP, Albany, NY, for Defendant–Appellee.

Before McLAUGHLIN, SACK, Circuit Judges, and CHATIGNY, District Judge.*

* The Honorable Robert N. Chatigny, United States District Court Judge for the District of Connecticut, sitting by designation.

## BACKGROUND

McLAUGHLIN, Circuit Judge:

The district court was surely correct here when it wrote, "[i]n the realm of ERISA suits ... the factual setting for this case may even pass as sensational and riveting." *Phillips v. Saratoga Harness Racing, Inc.*, 103 F.Supp.2d 127, 128 (N.D.N.Y.2000).

Plaintiff, Melody Phillips, married Frank Studenroth in 1985. By 1993, they were living in Saratoga Springs, New York, with their two children. Studenroth worked for the defendant, Saratoga Harness Racing, Inc. ("SHR"), and enrolled his family in SHR's group health insurance plan. This health insurance covered the cost of Phillips's expensive treatments for Graves' disease, a serious disorder of the thyroid gland.

In July 1993, during a vacation in Maine, Studenroth abandoned his family and moved out of the marital home. In short order Phillips and Studenroth were communicating only through attorneys who were unsuccessful in negotiating a separation agreement.

In the summer of 1994, impatient with the pace of the protracted negotiations, Studenroth spirited to the Dominican Republic where he commenced an *ex parte* divorce action. In October of that year, Phillips, still unaware of the Dominican divorce proceeding, sued for a separation in New York State Supreme Court, Saratoga County. Two days later, Studenroth obtained a default judgment of divorce in a Santo Domingo court.

Two days later, his Dominican judgment of divorce in hand, Studenroth married his secretary, Patricia Leadley, in Vermont. After a short honeymoon with Leadley, Studenroth returned to work and informed SHR's health plan administrator that he had divorced and remarried, and wished to drop Phillips from his medical coverage

and extend coverage to Leadley as his new wife.

██ When a beneficiary's coverage under an employer's health plan is terminated in a case like this, the employer must tell the beneficiary and advise her of her right to continue coverage at the employer's group rate, but at her own expense. Inexplicably, SHR gave the notice and other necessary forms to Studenroth, her estranged husband, with the understanding that he would deliver the documents to Phillips. SHR asserts that Studenroth attempted to give them personally to Phillips but that, in anger, she refused to accept them. SHR concedes that it never mailed Phillips any of the required forms, which is the standard method for delivery of such notices. Phillips states that she never received the notice of termination or any other forms regarding her health insurance.

In November 1994, one month after Studenroth's clandestine Vermont wedding, Phillips underwent treatments for her Graves' disease, under the assumption that her health insurance through SHR was still valid. Only then did Phillips learn that her husband had terminated her health coverage.

Meanwhile, in Phillips's separation action in New York Supreme Court, Studenroth interposed a defense that the marriage had already been terminated by the divorce he had obtained in the Dominican Republic. In March 1996, Justice Keniry of the New York Supreme Court rejected that defense, holding that the Dominican divorce was invalid in New York because Phillips had not "been given adequate notice of the commencement of the foreign divorce proceeding and an opportunity to be heard." *Phillips v. Studenroth*, No. 94-2427, slip op. at 5 (N.Y.Sup.Ct., Mar. 12, 1996).

In September 1996, Phillips brought this action in the United States District Court for the Northern District of New York (Kahn, *J.*). She sought to recover out-of-pocket medical expenses and other damages allegedly caused by SHR's failure to comply with the notice requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161–1168 ("COBRA").[1]

The parties made cross-motions for summary judgment under Fed.R.Civ.P. 56. In March 2000, Judge Kahn dismissed Phillips's complaint, holding that because Studenroth's Dominican divorce had been declared invalid in New York, the divorce could not suffice as a "qualifying event" that would trigger SHR's obligations under COBRA. Thus, Judge Kahn concluded the district court lacked subject matter jurisdiction over the case (the parties were not diverse), and denied both parties' summary judgment motions as moot. Phillips now appeals.

## DISCUSSION

### A. Subject Matter Jurisdiction

██ The precise question before us is whether an employer's receipt of notice of an *ex parte* foreign divorce, that is later declared invalid, is sufficient to trigger the employer's notice obligations under COBRA. We hold that it is.

██ "When reviewing a district court's determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo.*" *McCarthy v. Navistar Fin. Corp. (In re Vogel Van & Storage, Inc.)*, 59 F.3d 9, 11 (2d Cir.1995).

COBRA provides that:

The plan sponsor of each group health plan shall provide ... that each qualified beneficiary who would lose coverage under the plan *as a result of a qualifying event* is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

1. These sections of COBRA were eventually codified as part of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

29 U.S.C. § 1161(a) (emphasis added). A "qualifying event" is, in turn, defined, in relevant part, as follows:

> [T]he term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:
>
> . . .
>
> (3) The divorce or legal separation of the covered employee from the employee's spouse.

29 U.S.C. § 1163 & (3).

■ When a beneficiary's coverage is being terminated upon the occurrence of a "qualifying event," COBRA places notice obligations on both the employee and the employer. The employee is required to notify the employer, as follows:

> (3) each covered employee or qualified beneficiary is responsible for notifying the administrator of the occurrence of any qualifying event described in paragraph (3) . . . of section 1163 of this title, [divorce or legal separation], within 60 days after the qualifying event . . .

29 U.S.C. § 1166(a)(3). The employee's notice to the employer then obligates the employer to notify the beneficiary being terminated. COBRA states:

> (4) the administrator shall notify—
>
> . . .
>
> (B) in the case of [a divorce or legal separation] where the covered employee notifies the administrator . . ., any qualified beneficiary with respect to such event, of such beneficiary's rights under [COBRA].

29 U.S.C. § 1166(a)(4)(B).

In this case, Phillips argues that Studenroth's presentation of his Dominican divorce decree to SHR was a "qualifying event," and it triggered SHR's notification obligations under COBRA. SHR counters that because Studenroth's Dominican divorce was later declared to be invalid in the State of New York it cannot be a qualifying event.

■ For the reasons stated below, we conclude that whether or not an invalid divorce is actually a qualifying event under COBRA is not the question. It is the act of the employee telling his employer that the qualifying event has occurred—not the actual occurrence of the qualifying event itself—that triggers the employer's obligations under COBRA.

What little case law exists on the subject points to this conclusion.[2] Commenting on the notice requirements of COBRA, the Eighth Circuit wrote, "[u]nder COBRA, if the *notice of the divorce* is given to the employer by the covered employee, the plan administrator is required to provide the qualified beneficiary with notice of her rights to continue coverage." *Lincoln Gen. Hosp. v. Blue Cross/Blue Shield of Nebraska,* 963 F.2d 1136, 1140 (8th Cir. 1992) (emphasis added) (citing 29 U.S.C. § 1166(a)(4)(B)); *see also Zemko v. Muntz Industries, Inc.,* No. 94 C 761, 1997 WL 158318, at *2 (N.D.Ill. Mar.31, 1997) ("Upon receiving such *notification [of a qualifying event]* from the covered employee, the administrator must notify the qualified beneficiary of the right to elect continuation coverage." (emphasis added)) (citing 29 U.S.C. § 1166(a)(4)(B)). The unifying thread running through the cited cases is the notion that the *notice* of a qualifying event is the dispositive factor in determining whether an employer's COBRA obligations have attached.

This interpretation is entirely consistent with the portions of COBRA detailing the respective notice requirements of the cov-

---

2. SHR relies heavily on *Greene v. New Orleans Public Service, Inc.,* No. 92–3133, 1994 WL 71268 (E.D.La. Feb.25, 1994), which held that where a spouse had filed for divorce, but no judgment of divorce had yet been rendered, there was no "qualifying event" that would trigger COBRA's notice requirement. That case is quite obviously inapposite, however, because unlike the parties in *Greene,* Studenroth did obtain a judgment of divorce and did inform his employer that a divorce had occurred.

ered employee and the employer. *See* 29 U.S.C. § 1166. COBRA requires that, "the administrator shall notify . . . in the case of [a divorce] *where the covered employee notifies the administrator* . . . , any qualified beneficiary with respect to such event, of such beneficiary's rights under this subsection." 29 U.S.C. § 1166(a)(4)(B) (emphasis added). Once one unwinds the convoluted syntax, it is clear an employer's obligation to tell the beneficiary of his rights to continuation coverage is triggered when the covered employee notifies the administrator that the divorce has been granted.

■ This interpretation makes practical sense as well. A cursory examination of § 1163 reveals that whether or not a "qualifying event" has occurred (such as a "divorce or legal separation"; "becoming entitled to benefits under title XVIII of the Social Security Act"; or "[a] dependent child ceasing to be a dependent child") often requires a legal determination. 29 U.S.C. § 1163(3)-(5). Employers are rarely competent to make these legal determinations. Mindful of the Supreme Court's warning that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available," *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982), we conclude that public policy is best served by relieving health plan administrators of the responsibility for making legal judgments.

■ The interpretation advocated by SHR would undermine the remedial purpose of COBRA. COBRA was enacted as a legislative response to the growing number of Americans without health insurance and the reluctance of hospitals to treat the uninsured. *See Gaskell v. Harvard Coop. Soc'y*, 3 F.3d 495, 498 (1st Cir.1993) (quoting 1986 U.S.C.C.A.N. 42, 579, 622). By offering the opportunity to obtain continuation coverage, COBRA provided an alternative to prohibitively expensive individual health care insurance policies for those

people who, on account of certain events like a divorce or the loss of a job, were at risk of losing their employment-related group health insurance. If an employer can avoid COBRA's notice requirements simply by challenging the legal predicate for a qualifying event of which it was notified, the Congressional purpose of keeping affordable health insurance available will be thwarted.

This case is a textbook illustration of the problem. SHR wishes to rely on a New York court's determination that the divorce was invalid (a determination made almost two years *after* Phillips's health insurance was terminated) to excuse its failure to comply with COBRA's notice requirements, even though at the time SHR terminated Phillips's health insurance, SHR believed the divorce was valid.

Finally, even if mere notice of a qualifying event is insufficient and the qualifying event must actually have occurred to trigger COBRA obligations, Phillips raises strong arguments that a divorce did, in fact, occur. Notwithstanding that it was later declared invalid in New York, Studenroth did, indeed, obtain a judgment of divorce. Presumably, Phillips and Studenroth remain divorced in the eyes of the Dominican Republic. COBRA does not specify that the divorce must be valid and recognized in all jurisdictions. *See* 29 U.S.C. § 1163(3). In the absence of regulations from an administrative agency, (there are none), there is no reason to presume that Congress meant to delay the effect of COBRA's notice requirements until a divorce had withstood all legal challenges.

For all these reasons, we conclude that when an employee notifies his employer that a qualifying event has occurred, the employer's obligations under the notice provisions of COBRA are triggered. The district court has subject matter jurisdiction.

### B. Summary Judgment Motions

Although both parties filed motions for summary judgment, the district court regarded the motions as moot once it concluded that it lacked subject matter jurisdiction in the case. Because we hold that the district court has jurisdiction, the parties' motions for summary judgment should now be considered by the district court.

### CONCLUSION

For the foregoing reasons, we RE-VERSE the order of the district court dismissing the plaintiff's complaint for lack of subject matter jurisdiction, VACATE the denial, on mootness grounds, of the parties' motions for summary judgment, and REMAND this case to the district court for consideration of the parties' motions for summary judgment.