**Melody Edwardsen PHILLIPS,**
**Plaintiff,**

v.

**SARATOGA HARNESS RACING,**
**INC., Defendant.**

**No. 96–CV–1587 (LEK/RWS).**

United States District Court,
N.D. New York.

Nov. 4, 2002.

For the Plaintiff, the Law Office of Mary Beth Hynes, Clifton Park, Mary Beth Hynes, Esq.

For the Defendant, Featherstonhaugh, Conway, Wiley & Clyne, LLP, Albany, Randall J. Ezick, Esq., Of Counsel.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

Plaintiff brings this action invoking the jurisdiction of the Court pursuant to 28 U.S.C. § 1337, alleging that Defendant failed to fulfill its obligations to her in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, in particular the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. §§ 1161–1168, and further alleging supplemental New York State law claims for breach of contract and negligence arising from the same set of facts and circumstances. Plaintiff alleges that Defendant failed to notify her of her rights regarding the continuation of her group health care plan or of her right to elect to extend coverage under COBRA. Plaintiff seeks compensation for all out-of-pocket medical bills incurred as a result of her termination of coverage, as-yet undetermined damages, further penalties should Defendant be found liable for wilful neglect, reasonable attorney fees and costs, and such further relief as the Court deems reasonable and just.

## I. Background

Plaintiff Melody Edwardsen Phillips married Mr. Frank Studenroth (hereinafter referred to as "Plaintiff's Husband" or "Mr. Studenroth") in 1985, and they lived together in Saratoga Springs, New York, until 1993. In July of that year, while they were on vacation in Maine, Plaintiff's Hus-

band left the Plaintiff and moved out of their home. Their relationship continued to deteriorate until they were no longer speaking with each other.

On October 5, 1994, Plaintiff's Husband obtained an *ex parte* divorce in the Dominican Republic. The Dominican Republic court issued a divorce decree on the ground that Plaintiff, who (apparently knowing nothing of the proceeding) did not appear, was in default. Plaintiff's Husband quickly returned to the United States, and "married" his secretary, Ms. Patricia Leadley, on October 7, 1994. This *ex parte* foreign divorce was later held invalid and therefore did not effect the martial status of Plaintiff and her husband. *Phillips v. Studenroth*, Index No. 97–2427, slip op. at 4–6 (N.Y. Sup.Ct. filed Mar. 12 1996).

With the exception of a brief interim over ten years ago, Plaintiff's Husband has worked for Defendant Saratoga Harness Racing, Inc., since 1979. While working for Defendant, Plaintiff's Husband participated in a group health insurance plan administered by Defendant. Plaintiff also received health care coverage under this plan as his spouse. On or about October 10, 1994, following his "marriage" to Ms. Leadley, Plaintiff's Husband informed Ms. Helen Casson, Defendant's Personnel Director, that he had divorced and remarried, and that he wished to drop Plaintiff from his medical coverage, and extend coverage to Ms. Leadley as his new wife. Ms. Casson completed and signed a form indicating that Plaintiff was no longer eligible for medical coverage under the plan. Ms. Casson then gave Plaintiff's Husband papers notifying Plaintiff of her rights under COBRA. Plaintiff's Husband assured Ms. Casson that he would deliver them to Plaintiff. From October 12 to October 26—the 14 days following Ms. Casson's notification of Mr. Studenroth's divorce—Ms. Casson was on vacation.

There is some dispute as to what happened next.[1] Plaintiff's Husband states that he handed the COBRA forms to Plaintiff within days of receiving them from Ms. Casson and that Plaintiff threw them on the ground. Plaintiff's Husband also states that he put the forms in his children's luggage before they returned to Plaintiff after visiting him. (Defendant alleges that Plaintiff's Husband and Plaintiff communicated by passing notes in this fashion.) Ms. Casson states that in late October Plaintiff's Husband told her that he had delivered the COBRA forms to Plaintiff. Ms. Casson also claims that in late October or early November Plaintiff called her and explained that she had no need for COBRA coverage because she was still married to her husband, Mr. Studenroth. Plaintiff maintains that she learned that her insurance had lapsed in January 1995.

In November 1994, Plaintiff underwent medically necessary treatment for thyroid eye disease, including radiation therapy, under the assumption that her health insurance through Defendant was still in effect. She subsequently learned that her health coverage had been terminated in October 1994 and that her medical treatments had not been covered by Defendant's insurance.

In a decision and order entered March 12, 1996, by the Honorable William H. Keniry, Justice of the State of New York Supreme Court, 4th Judicial District, Saratoga County, the Dominican Republic divorce was declared null and void, on the ground that Plaintiff had not "been given adequate notice of the foreign divorce pro-

---

1. There is no dispute that these events took place more than 14 days after Defendant was notified of Mr. Studenroth's "divorce." As explained below, Defendant was obliged to notify Plaintiff of her COBRA rights within this 14 day period.

ceeding and an opportunity to be heard." *Phillips v. Studenroth,* Index No. 97–2427, slip op. at 4–6 (N.Y. Sup.Ct. filed Mar. 12 1996).

In an earlier decision, this Court found that the nullified foreign divorce did not constitute a "qualifying event" that triggered Defendant's notice obligations under COBRA and gave rise to Plaintiff's cause of action. Accordingly, the action was dismissed for lack of subject matter jurisdiction. *Phillips v. Saratoga Harness Racing, Inc.,* 103 F.Supp.2d 127, 130 (N.D.N.Y.2000). On appeal, the Second Circuit reversed this decision, holding that Defendant's notice obligations under COBRA were triggered when Plaintiff's Husband notified the plan administrator that a "qualifying event" had occurred. *See Phillips v. Saratoga Harness Racing,* 240 F.3d 174, 179 (2d. Cir.2001). The Court of Appeals remanded the case for consideration of the merits of Defendant's and Plaintiff's motions for summary judgment pursuant to Fed.R.Civ.P. 56. *Id.* at 180. It is to those motions which the Court now turns.

Defendant moves for dismissal of the complaint and for costs, including reasonable attorneys' fees. Plaintiff moves for a finding of Defendant's liability as a matter of law and for the medical expenses incurred by her during the period of time her insurance lapsed, as well as the maximum statutory fine available.[2]

## II  Discussion

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.' " *Brown v. Henderson,* 257 F.3d 246, 251 (2d Cir.2001) (quoting *Cifra v. General Electric Co.,* 252 F.3d 205, 216 (2d Cir.2001)).

Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). The nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown,* 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990).

### B.  COBRA's Notice Requirement

In 1985 Congress passed a series of amendments to ERISA, collectively known as COBRA, aimed at allowing individuals who had employment-related group health

---

**2.** Neither party addressed Plaintiff's supplemental New York State law claims for breach of contract and negligence. In addition, as explained more fully below, the parties failed to adequately address damages in their motions. As such, the motions for summary judgment now before the court are properly construed as motions for partial summary judgment on the sole issue of Defendant's liability under ERISA. *See* Fed.R.Civ.P. 56(c) ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.")

care insurance to continue receiving health care coverage after the occurrence of a "qualifying event," such as the termination of the covered employee's employment or the divorce from the covered employee. *See Hubicki v. Amtrak Nat'l Passenger R.R. Co.*, 808 F.Supp. 192, 196 (E.D.N.Y. 1992) (explaining the purpose of COBRA). COBRA imposes certain obligations on the covered employee and the plan administrator upon the occurrence of a "qualifying event." Of particular significance to this case, within 14 days of being notified that a covered employee has received a divorce which would terminate health care coverage of the employee's ex-spouse, a health care plan administrator must notify the ex-spouse of his or her rights under COBRA. 29 U.S.C. § 1166. As explained above, the Second Circuit has held that a "qualifying event" triggering Defendant's notification obligation occurred when Plaintiff's Husband's notified Defendant of his divorce from Plaintiff. *Phillips,* 240 F.3d at 179. The question that remains is whether Defendant fulfilled that obligation.

■ 29 U.S.C. § 1166 does not specify the manner in which a plan administrator must notify a beneficiary of his or her COBRA eligibility. However, courts considering the issue have held that an administrator complies with the notice requirements of § 1166 when he or she makes a good faith effort to notify the plan beneficiary. *See, e.g., Ehrlich v. Howe,* 848 F.Supp. 482, 490 (S.D.N.Y.1994) ("[S]everal courts have held that good faith efforts to comply with COBRA notice requirements are sufficient for compliance with the statute.") (citations omitted); *Conery v. Bath Assoc.,* 803 F.Supp. 1388, 1398 (N.D.Ind.1992) ("Courts that have considered [how COBRA eligibility must be communicated under § 1166] have determined that a good faith attempt to comply with a reasonable interpretation of the provision is sufficient.") (citations omitted). This good faith standard "obligates employers to use means 'reasonably calculated' to reach plan participants." *Degruise v. Sprint Corp.,* 279 F.3d 333, 336 (5th Cir. 2002) (citations omitted); *see also Keegan v. Bloomingdale's, Inc.,* 992 F.Supp. 974, 979 (N.D.Ill.1998) ("[T]he issue [in a dispute over § 1166 notification] is not whether the former employee actually received notice; the issue is whether the plan administrator 'caused the notice to be sent in a good faith manner reasonably calculated' to reach the former employee.") (quoting *Jachim v. KUTV Inc.,* 783 F.Supp. 1328, 1333–34 (D.Utah 1992)); *Conery,* 803 F.Supp. at 1398 (same).

Relying on *Dehner v. Kansas City Southern Indus., Inc.* 713 F.Supp. 1397 (D.Kan.1989), Defendant contends that the delivery of Plaintiff's COBRA notice to Mr. Studenroth was reasonably calculated to notify Plaintiff of her COBRA benefits. In *Dehner,* the court considered a plan administrator's obligation to provide COBRA notices to covered employees at the beginning of the plan year immediately following the enactment of COBRA. *Id.* at 1400. Brian Dehner participated in a health care plan administered by the defendant. Mr. Dehner's wife, Plaintiff Melissa Dehner, and their child, also participated in the plan. The defendant hand delivered to Mr. Dehner an envelope containing COBRA notices for Mr. Dehner and Mrs. Dehner, along with a note instructing Mr. Dehner to deliver Mrs. Dehner's notice to her. *Id.* at 1399. The court held that this method of delivery "was reasonably calculated to reach those to whom they were directed." *Id.* at 1400. Dehner is clearly distinguishable from the facts of this case. Most importantly, whereas Mr. Studenroth and Plaintiff were allegedly divorced and unquestionably estranged at the time that Defendant was obliged to notify Plaintiff of her COBRA rights, the couple in *Dehner* were married.

Noting that this issue appears to be one of first impression, Plaintiff argues that "handing the notices to a [self-professed] ex-husband who married his secretary within 48 hours of divorcing plaintiff" does not constitute a good faith attempt reasonably calculated to notify Plaintiff of her COBRA rights. This Court agrees. Viewing the facts in the light most favorable to Defendant, I find as a matter of law that Defendant failed to meet its notification obligations under 29 U.S.C. § 1166. While some married couples are able to dissolve their marriages amicably, it is well known that separations and divorces often turn once-loving spouses into bitter enemies. As such, it is unreasonable to depend on a health care plan beneficiary's former spouse to deliver a CO-BRA notice to the beneficiary. The very nature of divorce itself forecloses this avenue as a reasonable attempt to comply with the notification requirements. Nor could a reasonable trier of fact find that a health care plan administrator fulfills its statutory duty to notify a beneficiary of the beneficiary's COBRA rights by delegating that duty to the recently divorced ex-spouse (or a person purporting to be the ex-spouse) of the beneficiary.[3]

The Court is aware that the Second Circuit has stated that "[s]ummary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles," *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir. 1993) (internal quotations omitted), and that at least one district court in this Circuit has refused to grant summary judgment in an action alleging violation of § 1166 on the grounds that a question of fact remained regarding whether the defendant had satisfied its notice obligations in good faith, *Ehrlich*, 848 F.Supp. at 490. However, the good faith standard that is employed to determine compliance with § 1166 is not a wholly subjective one. As noted above, § 1166 requires employers to use notifications procedures that are "reasonably calculated" to reach beneficiaries. Accordingly, it is entirely appropriate for a court to enter summary judgment against Defendant in this action on the ground that it employed a method of § 1166 notification that was *per se* unreasonable. Such a notification procedure cannot, as a matter of law, be considered "reasonably calculated" to reach the beneficiary. Defendant therefore failed to fulfill its § 1166 obligations.

## C. Damages

■ In her motion for summary judgment, Plaintiff requests an award of all medical expenses incurred by her during the period of time her insurance lapsed, as well as the maximum statutory fine available. However, Plaintiff has failed to establish the absence of a dispute as to the facts that are material to the issue of the statutory fine and damages. Indeed, Plaintiff has failed to even identify the facts that are material to these issues. Under these circumstances, Plaintiff's motion for summary judgment is denied to the extent that it requests an award of damages and a statutory fine. *See* Fed.

3. In light of this holding, Defendant's claim for attorneys' fees "incurred in defending this groundless action" is denied.

Plaintiff also argues that she should be granted summary judgment on the grounds that Defendant has failed "to make a showing sufficient to establish the existence of an element essential to that party's case" because it cannot prove that it notified Plaintiff of her COBRA rights. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548 (1986). Because the Court finds that the actions Defendant undertook to notify Plaintiff were not reasonably calculated to notify Plaintiff of her COBRA rights, it is unnecessary for the Court to consider whether Defendant has established that it can show that it actually undertook those actions.

R.Civ.P. 56(d) (providing, *inter alia*; for the entry of summary judgment as to liability but not damages).

## CONCLUSION

Accordingly, it is hereby:

ORDERED that Defendant's motion for summary judgment is **DENIED**; and it is further

ORDERED that Plaintiff's motion for summary judgment in **GRANTED** as to Defendant's liability under ERISA and is **DENIED** in all other respects; and it is further

ORDERED that the parties appear on December 11, 2002, at 10:00 a.m. in Albany, N,Y for a status conference; and it is further

ORDERED the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.