368 F.3d 108
 Gregory BRACEY, Plaintiff-Appellee,
v.
BOARD OF EDUCATION OF CITY OF BRIDGEPORT, Stamford Board of Education, Starlett Wilder, Maria Torrado-Lyons, Defendants,
New Haven Board of Education, Defendant-Appellant.
 Docket No. 03-7094.
 United States Court of Appeals, Second Circuit.
 Argued: December 5, 2003.
 Decided: May 11, 2004.
 
 Charles D. Ray, Cummings & Lockwood LLC (Ingrid L. Moll, of counsel), Hartford, CT, for Defendant-Appellant.
 Earl I. Williams, New Haven, CT, for Plaintiff-Appellee.
 Before: CARDAMONE, SACK, and JOHN R. GIBSON,* Circuit Judges.
 SACK, Circuit Judge.
 
 
 1
 Following a jury trial in the United States District Court for the District of Connecticut (Gerard L. Goettel, Judge), in which the jury awarded plaintiff-appellee Gregory Bracey $250,000 in compensatory damages on his claim of retaliatory discharge, and the judgment of the district court entered thereon, the defendant-appellant New Haven Board of Education (the "Board") moved to dismiss the complaint for lack of subject matter jurisdiction and moved for judgment as a matter of law, a new trial, or, alternatively, relief from judgment. The district court denied the Board's motions. Because we agree with the Board that the evidence did not support the compensatory damages award, we vacate the award and remand to the district court for further proceedings. We affirm the judgment of the district court in all other respects.
 
 BACKGROUND
 
 2
 The trial record discloses the following largely undisputed facts. From November 1996 through December 1997, Bracey was a school teacher at the Urban Youth Middle School ("Urban"), a public school for "special needs" students in New Haven, Connecticut. During his first year at Urban, Bracey received positive evaluations; he was given no reprimands.
 
 
 3
 In 1997, Urban instituted a "behavior modification program" called Area Cooperative Educational Services ("ACES") that incorporated so-called crisis management techniques and permitted school personnel to use physical force to restrain children who the teachers perceived to be acting aggressively or violently. Bracey, several other teachers, and the school's social worker objected to the program, giving rise to conflict between them and the school administration.
 
 
 4
 On two occasions, Bracey interceded to stop what he viewed as physical abuse of students. The first incident took place in September 1997, when, according to ACES employee Larry Cates, a student at Urban named David was "angry and out of control." Oct. 9, 2002, Trial Tr., at 8. David's classroom had been "torn apart." Id. As part of the ACES program, Cates physically removed David from the classroom and brought him to a closed and windowless "time-out room" to allow him to calm down. When Cates and another ACES employee got David into the room, they performed a "two-person takedown," pinning David to the floor. Id. at 8, 11.
 
 
 5
 At the end of the school day, David complained to Bracey, his former teacher, that he, David, was having difficulty breathing. Without first informing or obtaining permission from his superiors, Bracey drove David and his mother to a local hospital, where Bracey reported the incident to a social worker, as he thought he was required to do by law. He then drove David and his mother to a police station so that they could report the incident.
 
 
 6
 When Bracey arrived for work at Urban the next morning, he was reprimanded by Urban's principal, Dorinda Sizemore, for failing to tell her in advance of his trip to the hospital and the police station. A similar reprimand was delivered in writing by Sizemore to Bracey shortly thereafter.
 
 
 7
 Some three months later, in December of that year, Bracey objected to the physical removal and subsequent "takedown" of another student who, according to Sizemore, had become "belligerent" while in the cafeteria. Oct. 8, 2002, Trial Tr., at 71. An ACES employee physically picked up the student and carried him out of the cafeteria. The employee then put his knee in the student's back, incapacitating him. Bracey confronted the employee, challenging the propriety of his actions. For this, Bracey was given another disciplinary warning and was suspended for one day.
 
 
 8
 Following these incidents, Bracey and other Urban personnel complained to the Connecticut Department of Children and Families (the "DCF") about what they considered to be harsh treatment of the Urban students, prompting the DCF to interview the personnel involved.[1]
 
 
 9
 In January 1998, Sizemore recommended to Dr. Reginald Mayo, the New Haven Superintendent of Schools, that Bracey be suspended without pay and transferred to another school and that his contract as a teacher not be renewed. Sizemore explained at trial that she made these recommendations because Bracey "hindered the program" and "undermin[ed]" her authority with his report to the DCF. Oct. 8, 2002, Trial Tr., at 80, 81. Bracey was subsequently transferred to another school. Based on Sizemore's recommendation to Dr. Mayo and Dr. Mayo's recommendation to the Board, Bracey's employment by the Board as a teacher ended in June 1998. Sizemore testified that the fact that Bracey had reported the use of force to the DCF played a "great role" in her decision to recommend that his contract not be renewed. Oct. 8, 2002, Trial Tr., at 82.
 
 
 10
 Dr. Mayo testified at trial that Bracey's complaints about students being improperly restrained and about the use of force to subdue the students were "part of" the reason he recommended to the defendant that it not renew Bracey's contract. Oct. 9, 2002, Trial Tr., at 99. Dr. Mayo also testified that he was "sure there was some discussion" with Sizemore before recommending Bracey's termination to the Board, id. at 98, and that the DCF investigation was brought to his attention "at some point," id. at 101.
 
 
 11
 More than a year later, Bracey applied to the Board of Education of the City of Bridgeport ("BECB") for a teaching position at a public school in Bridgeport, Connecticut. The BECB denied Bracey's application.
 
 
 12
 Bracey then brought this action in state court against the BECB alleging intentional and negligent infliction of emotional distress and race-based discrimination in violation of 42 U.S.C. § 1981 in connection with its failure to hire him. BECB removed the action to federal court pursuant to 28 U.S.C. § 1441(a).[2] Bracey then filed an amended complaint in federal court, adding claims against the Board and the Stamford Board of Education. After several further amendments of the complaint by Bracey and motions for summary judgment by various defendants, the substance of which is not material to this appeal, only state-law claims against the Board for retaliatory discharge and tortious interference remained. Bracey alleged in his final amended complaint that the Board violated a Connecticut statute, Conn. Gen.Stat. § 31-51q,[3] by subjecting Bracey to retaliatory discipline and discharge because of his complaints regarding the treatment of David, in particular his report to the DCF. Bracey asserted that the subject of his complaint to the DCF was a matter of public concern. He further alleged that the Board had tortiously interfered with his right to contract.
 
 
 13
 The Board moved pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction, noting that the remaining claims were state claims over which the court "should refrain from exercising its jurisdiction through the concept of pend[e]nt jurisdiction." Defendant's Second Motion to Dismiss Fourth Amended Complaint, Oct. 8, 2002. The motion was not filed until the second day of trial.[4] The district court characterized the motion as having "a lot of merit to it." Oct. 9, 2002, Trial Tr., at 217. The court noted, however, that trial had by then begun. Using what the court referred to as its "discretion to decide the State Court issues even if the Federal ones were thrown out," id. at 218, the court concluded: "[The] jury's going to decide it." Id.
 
 
 14
 The district court dismissed the tortious interference claim as a matter of law at the close of Bracey's case-in-chief. Bracey does not contest this dismissal on appeal. His section 31-51q state-law claim, however, was submitted to the jury, which returned a verdict for Bracey for $250,000 in compensatory damages.
 
 
 15
 The Board then filed a motion for judgment as a matter of law for the first time, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, for a new trial, pursuant to Rule 59, or for relief from judgment, pursuant to Rule 60. The Board argued that the Rule 12(b)(1) motion should have been granted. With respect to the remaining portions of the motion, the Board contended that the evidence did not support the compensatory damages award and that the verdict was against the weight of the evidence.
 
 
 16
 The district court concluded that the Rule 12(b)(1) motion had been "filed only a few days before the trial began" and therefore was "not ripe for decision until the trial was in progress." Bracey v. Bd. of Educ., No. 3:00-CV-231 (GLG) (D.Conn. Dec. 17, 2002), at 3. With respect to the jury's damages award, the district court concluded that the jury had "sufficient basis" for it. Id. In response to the Board's motion for judgment as a matter of law, a new trial, or relief from judgment, the district court remarked, "[T]rial judges are continually cautioned by the Appellate Court not to take matters from the jury and not to overturn jury verdicts except in the most extreme circumstances." Id. While commenting that the "evidence in th [e] case was not strongly in Plaintiff's favor," the court said that the circumstances required for overturning the jury verdict "are not present here." Id. The district court thereupon denied the Board's motions.
 
 
 17
 The Board appeals the judgment of the district court on the ground that it did not have subject matter jurisdiction over the state-law claims on which the judgment was based. It also challenges the amount of the award and the district court's denial of its motion for judgment as a matter of law, a new trial, or relief from judgment.
 
 DISCUSSION
 I. Standard of Review
 
 18
 "When reviewing a district court's determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo." Phillips v. Saratoga Harness Racing, Inc., 240 F.3d 174, 177 (2d Cir.2001) (citation and internal quotation marks omitted).
 
 
 19
 We review de novo the district court's denial of a motion for judgment as a matter of law. Wolf v. Yamin, 295 F.3d 303, 308 (2d Cir.2002). In so doing, "the question is always whether, after drawing all reasonable inferences in favor of the non-moving party and making all credibility assessments in [the non-movant's] favor, there is sufficient evidence to permit a rational juror to find in [the non-movant's] favor." McCarthy v. New York City Technical Coll., 202 F.3d 161, 167 (2d Cir.2000) (citation and internal quotation marks omitted).
 
 
 20
 We review a district court's decision to grant or deny a motion for a new trial for abuse of discretion. See Presley v. U.S. Postal Serv., 317 F.3d 167, 173 (2d Cir.2003). We review a district court's ruling on a motion for relief from judgment pursuant to Rule 60 for abuse of discretion. Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 729 (2d Cir.1998). "While it is clear that we have the power to review [for abuse of discretion] a trial judge's refusal to set aside a verdict for excessiveness, ... the scope of our review is ... narrow." Diapulse Corp. of Am. v. Birtcher Corp., 362 F.2d 736, 744 (2d Cir.), cert. dismissed, 385 U.S. 801, 87 S.Ct. 9, 17 L.Ed.2d 48 (1966).
 
 II. Subject Matter Jurisdiction
 
 21
 The Board contends, as an initial matter, that the district court lacked subject matter jurisdiction over Bracey's remaining state-law claims against the Board and that even if the district court had such jurisdiction, it abused its discretion in exercising it. Bracey responds that his claims raise a substantial federal question because they necessarily turn on the construction of federal law. We agree with Bracey.
 
 
 22
 
 A. Federal Court Jurisdiction over State-Law Claims
 
 
 
 23
 The propriety of hearing Bracey's case in federal court "turns on whether the case falls within the original `federal question' jurisdiction of the federal courts." Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Under 28 U.S.C. § 1331, federal courts have original jurisdiction over cases "arising under" federal law.
 
 
 24
 Federal jurisdiction is typically based on the fact that federal law creates the plaintiff's asserted cause of action. See Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916) ("A suit arises under the law that creates the cause of action."). But a plaintiff need not allege a cause of action created by federal law for the case to arise under federal law. If the plaintiff's statement of his or her state-law claim in a well-pleaded complaint "necessarily depends on resolution of a substantial question of federal law," Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), then the "case may also arise under federal law within the meaning of section 1331," Barbara v. N.Y. Stock Exch., Inc., 99 F.3d 49, 54 (2d Cir.1996).
 
 
 25
 As the quoted language from Franchise Tax Board suggests, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow, 478 U.S. at 813, 106 S.Ct. 3229; accord W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp., 815 F.2d 188, 193 (2d Cir.), cert. denied, 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 107, and cert. denied, 484 U.S. 871, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987). The federal question to be resolved must be "substantial." Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 570 (2d Cir.1995) (quoting, inter alia, Merrell Dow, 478 U.S. at 813-14, 106 S.Ct. 3229). We have pointed to language in Supreme Court opinions to the effect that "in determining federal question jurisdiction, courts must make principled, pragmatic distinctions, engaging in a selective process which picks the substantial causes out of the web and lays the other ones aside." Id. (quoting, inter alia, Merrell Dow, 478 U.S. at 813-14, 106 S.Ct. 3229) (citation and internal quotation marks omitted).
 
 
 26
 The Supreme Court has instructed that a federal question is sufficiently substantial to support federal jurisdiction if "the vindication of a right under state law necessarily turn[s] on some construction of federal law." Franchise Tax Bd., 463 U.S. at 9, 103 S.Ct. 2841. "Leading commentators have suggested that for purposes of § 1331 an action `arises under' federal law if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." Id. (citation and internal quotation marks omitted); see also T.B. Harms Co. v. Eliscu, 339 F.2d 823, 827 (2d Cir.1964) (Friendly, J.) ("Even though the claim is created by state law, a case may `arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law."), cert. denied, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965).
 
 
 27
 In Merrell Dow, the Supreme Court indicated that when a state-law claim is based on federal law but Congress has chosen not to create a private right of action for violation of that federal law, the federal issue is not sufficiently substantial to confer federal jurisdiction. See Merrell Dow, 478 U.S. at 814, 106 S.Ct. 3229. Some circuit courts read Merrell Dow as requiring that there be a federal right of action for there to be section-1331 jurisdiction. See, e.g., Seinfeld v. Austen, 39 F.3d 761, 764 n. 2 (7th Cir.1994), cert. denied, 514 U.S. 1126, 115 S.Ct. 1998, 131 L.Ed.2d 1000 (1995) ("Merrell Dow interpreted the word `substantial' in this phrase to mean a congressional choice to include a private right of action in favor of plaintiffs."); see also Richard H. Fallon, Jr., Daniel J. Meltzer, and David L. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 885 (5th ed.2003) (discussing the differing views among the circuits).[5]
 
 
 28
 "Although ... cases in this circuit have not read Merrell Dow categorically to preclude federal question jurisdiction in the absence of a private remedy for violation of the relevant federal law, see, e.g., [W. 14th St., 815 F.2d at 196], the existence vel non of such a private right of action is the starting point for our inquiry into the substantiality of the federal questions involved in a lawsuit." Barbara, 99 F.3d at 54.
 
 
 B. Jurisdiction over Bracey's Claim
 
 
 29
 The rights protected by Connecticut General Statute section 31-51q relate to "the exercise by [an] employee of rights guaranteed by the first amendment to the United States Constitution or section ... 4 ... of article first of the Constitution of the state [of Connecticut]."[6] Conn. Gen.Stat. § 31-51q. Bracey claims that the Board violated section 31-51q by retaliating against him because he exercised his free speech rights as guaranteed by the United States and Connecticut Constitutions when complaining to the DCF and reporting to the hospital and police department.
 
 
 30
 To begin at "the starting point," Barbara, 99 F.3d at 54, Congress has provided a cause of action with respect to such a claim. Bracey asserts that he lost his employment as a public-school teacher because of his exercise of his right to speak to the DCF, the hospital, and the police department about a matter of public interest: the physical treatment of public-school students. Congress, through enactment of what is now 42 U.S.C. § 1983, created a cause of action applicable to, among many other things, just such circumstances. See, e.g., Melzer v. Bd. of Educ., 336 F.3d 185 (2d Cir.2003) (addressing section 1983 claim brought against the New York City Board of Education for retaliatory termination of the plaintiff's teaching position allegedly in violation of his constitutional rights to freedom of association and expression), cert. denied, 540 U.S. 1183, 124 S.Ct. 1424, 158 L.Ed.2d 87 (2004); see also Scott v. Coughlin, 344 F.3d 282 (2d Cir.2003) (addressing under section 1983 a prisoner's claim of retaliatory disciplinary infraction charges against him for exercise of First Amendment rights); Phillips v. Bowen, 278 F.3d 103 (2d Cir.2002) (considering under section 1983 the plaintiff's claim of retaliatory adverse employment action for her exercise of First Amendment rights); McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir.1999) (addressing under section 1983 the plaintiff's claim of retaliatory discharge for exercise of First Amendment rights); Clue v. Johnson, 179 F.3d 57 (2d Cir.1999) (same, in the context of retaliatory job suspension); cf. Mitchum v. Foster, 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights — to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." (citation and internal quotation marks omitted)); LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 426 (2d Cir.1995) (holding, in the context of the free exercise of religion, that "[s]ection 1983 creates a cause of action against any person who, acting under color of state law, deprives another of `any rights, privileges, or immunities secured by the Constitution and laws' of the United States, 42 U.S.C. § 1983, including ... First Amendment right[s]"), cert. denied, 520 U.S. 1263, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997).
 
 
 31
 The question, then, is whether Bracey's state-law claim "necessarily turn[s] on some construction of federal law." Franchise Tax Bd., 463 U.S. at 9, 103 S.Ct. 2841. We conclude that it does. Bracey alleges on the face of his well-pleaded complaint that the Board violated his rights as established, under section 31-51q, by either the United States or the Connecticut Constitution. Courts construing section 31-51q consistently look to federal First Amendment law to determine whether section 31-51q gives rise to a cause of action in the cases before them. See, e.g., Cotto v. United Techs. Corp., 48 Conn.App. 618, 629, 711 A.2d 1180, 1186 (1998) ("In deciding whether the allegations of the plaintiff's complaint [under section 31-51q] state a cause of action for the deprivation of a constitutionally protected right, it is instructive to review federal and state cases arising under 42 U.S.C. § 1983 because § 31-51q is analogous."); Daley v. Aetna Life & Cas. Co., 249 Conn. 766, 778-79, 734 A.2d 112, 121 (1999) (looking to Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and Luck v. Mazzone, 52 F.3d 475 (2d Cir.1995), to determine whether section 31-51q applies to speech about private matters); Andersen v. E & J Gallo Winery, No. H 85-295(JAC), 1985 WL 134, at *3, 1985 U.S. Dist. LEXIS 14063, at *15-*16 (D.Conn. Nov. 7, 1985) (interpreting section 31-51q by "turn[ing] for guidance to cases involving claims brought by public employees alleging termination of employment in violation of their First Amendment Rights," looking, inter alia, to Connick, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)); D'Angelo v. McGoldrick, 239 Conn. 356, 360 n. 5, 685 A.2d 319, 322 n. 5 (1996) (explaining that section 31-51q "encompasses rights guaranteed by the first amendment to the United States constitution").[7] Whether Bracey recovered because the Board violated his right to free expression under the United States Constitution or the Connecticut Constitution, or both, then, does not matter. In any case, a federal question was implicated on the face of his well-pleaded complaint.
 
 
 32
 We therefore conclude that the vindication of Bracey's state-law rights as asserted in his well-pleaded section 31-51q cause of action requires that a court "construe" federal First Amendment law and "evaluate [its] scope." D'Alessio v. N.Y. Stock Exch., Inc., 258 F.3d 93, 101 (2d Cir.), cert. denied, 534 U.S. 1066, 122 S.Ct. 666, 151 L.Ed.2d 580 (2001). The federal question raised by Bracey's claim is thus substantial. Id. at 101-02. The district court was therefore correct in exercising jurisdiction over the claim.
 
 III. Judgment as a Matter of Law
 
 33
 The Board argues that the evidence presented at trial was insufficient to prove, as required by section 31-51q, that Bracey was fired "on account of" his reports to the DCF, the hospital, and the police department. While the Board does not appear to contest the allegation that Bracey's report was part of what caused Sizemore to recommend that he be fired, it argues that Dr. Mayo and the Board had ultimate responsibility over Bracey's employment, but that Bracey did not establish that they knew of the protected speech or based their decision to fire Bracey upon it. Based on this asserted deficiency, the Board asks that we reverse the district court's denial of its motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.
 
 
 34
 A post-trial Rule 50(b) motion for judgment as a matter of law is properly made only if a Rule 50(a) motion for judgment as a matter of law has been made before submission of the case to the jury. See Fed.R.Civ.P. 50(a)-(b); see also Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1155 (2d Cir.1994) ("The rule is well established that a motion for [judgment as a matter of law] at the close of all the evidence is a prerequisite for [judgment as a matter of law]." (second brackets in original; citation and internal quotation marks omitted)); Pittman by Pittman v. Grayson, 149 F.3d 111, 120 (2d Cir.1998) ("[T]o be timely, the motion for judgment as a matter of law must be made `before submission of the case to the jury.'" (quoting Fed.R.Civ.P. 50(a)(2))), cert. denied, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). Though a procedural requirement, it may not be waived by the parties or excused by the district court. Cruz, 34 F.3d at 1155. The purpose of the rule is "to assure the responding party an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment." Piesco v. Koch, 12 F.3d 332, 340 (2d Cir.1993) (citation and internal quotation marks omitted).[8]
 
 
 35
 The Board filed its first motion for judgment as a matter of law on October 28, 2002, seventeen days after judgment was entered. Because the Board never filed a Rule 50(a) motion for judgment as a matter of law, we do not address its Rule 50(b) motion.
 
 IV. Motion for a New Trial
 
 36
 The Board maintains that the district court erred in not granting its motion for a new trial because the jury's award of damages was not supported by the evidence.
 
 
 37
 In deciding a defendant's motion for a new trial pursuant to Federal Rule of Civil Procedure 59, or for relief from judgment pursuant to Federal Rule of Civil Procedure 60, the district court has discretion to "overturn[] verdicts for excessiveness and order[] a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). Because Connecticut law governs Bracey's claim, we look to that law to determine the standard for excessiveness by which we can judge whether the district court abused its discretion in concluding that the award was not excessive. See Presley, 317 F.3d at 173.
 
 Under Connecticut law:
 
 38
 The size of the verdict alone does not determine whether it is excessive. The only practical test to apply is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.
 
 
 39
 Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 551, 733 A.2d 197, 214 (1999) (alterations, citation, and internal quotation marks omitted); see also Morales v. PenTec, Inc., 57 Conn.App. 419, 435, 749 A.2d 47, 56-57 (2000) (defining an excessive verdict as "clearly exorbitant and excessive or ... so shocking to a sense of justice that it leads us to the conclusion that the jury was influenced by prejudice, partiality, mistake or corruption" (citation and internal quotation marks omitted)). We must ensure that the damage award falls "somewhere within the necessarily uncertain limits of just damages." Bartholomew v. Schweizer, 217 Conn. 671, 688-89, 587 A.2d 1014, 1023 (1991) (citation and internal quotation marks omitted).
 
 
 40
 The district court instructed the jury on the issue of damages in part as follows:
 
 
 41
 There are two types of damages you may consider: compensatory and punitive.... [Compensatory damages] represent a sum of money that will fairly and adequately and reasonably compensate a person for the harm or injuries proximately caused by another's conduct. You may consider any dollar loss suffered, such as lost wages, as well as any reasonable amount to compensate plaintiff for any emotional pain, personal humiliation, impairment of reputation, embarrassment, or other suffering which you find that he suffered as a result of the unlawful conduct of the defendant.... Compensatory damages are not allowed as punishment and cannot be imposed ... to penalize a defendant. Neither can such damages be based upon speculation because it is only actual or compensatory damages which are recoverable.... [T]here must be evidence to establish damages with at least a reasonable degree of certainty.... If you find that the defendant violated the plaintiff's constitutional rights, you should compensate the plaintiff for his damages only to the extent that his damages are reasonably quantifiable. The law does not recognize an inherent or abstract monetary value of a constitutional right. Therefore, no compensatory damages may be awarded for violation of a constitutional right absent proof of actual injury or loss.
 
 
 42
 Oct. 10, 2002, Trial Tr., at 35-37.
 
 
 43
 The district court thus allowed the jury to compensate the plaintiff for noneconomic, emotional injury, damage to reputation, and the like. While "[p]roper compensation for noneconomic damages cannot be computed by a mathematical formula, and there is no precise rule for the assessment of damages[,] ... the plaintiff must provide sufficient evidence for the trier to make a fair and reasonable estimate." Johnson v. Chaves, 78 Conn.App. 342, 347, 826 A.2d 1286, 1289, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003). Bracey presented no evidence with respect to any such damages and was therefore not entitled to compensation for it.
 
 
 44
 Inasmuch as there was no evidence of noneconomic damages, the damage award was required to reflect the economic loss Bracey suffered as a result of the Board's behavior. But Bracey did not testify as to economic damages either. The non-testimonial evidence he presented in that regard was limited to copies of his income tax returns for the years 1997 (showing wages of $34,210 in addition to business income), 1999 (showing wages of $8,260 in addition to business income), and 2000 (showing business income but no wages), and a copy of his 1996 teaching contract with New Haven (showing a salary of $31,699). Although he did testify that he was gainfully employed in and after the year 1999, except for the 1999 and 2000 income tax returns, there is no evidence as to the amount of his compensation for that work.
 
 
 45
 The district court explained the jury's award as being based on lost earnings, concluding that the jury's compensatory award of $250,000 was not excessive because Bracey's "evidence concerning what he earned prior to his termination with the defendant school board and what he earned thereafter established a sufficient basis for the jury's compensatory damages award." Bracey, No. 3:00-CV-231 (GLG), at 3. But we cannot, after drawing all reasonable inferences in favor of Bracey, find an evidentiary basis in the record for a jury award to him of seven times his maximum salary in the position from which he was wrongfully dismissed. Of course, we do not conclude that damages of that magnitude can never be proved, only that Bracey has failed to prove them in this case. As Judge Posner has remarked more than once, albeit in somewhat different contexts, "A plaintiff is not permitted to throw himself on the generosity of the jury. If he wants damages, he must prove them." Taliferro v. Augle, 757 F.2d 157, 162 (7th Cir.1985) (compensatory damages for violation of Fourteenth Amendment rights); accord Douglass v. Hustler Magazine, Inc., 769 F.2d 1128, 1144 (7th Cir.1985) (damages for emotional distress), cert. denied, 475 U.S. 1094, 106 S.Ct. 1489, 89 L.Ed.2d 892 (1986).
 
 
 46
 We thus conclude that the damage award was clearly excessive. The district court's denial of the defendant's motion for a new trial or, alternatively, for relief from judgment was therefore an abuse of discretion. We remand the case to the district court for a new trial solely on the issue of damages. The court may, in its discretion, offer Bracey a remittitur of the excessive portion of the jury award, as determined by the district court consistent with the foregoing discussion, as an alternative to a new trial.[9] See Lee v. Edwards, 101 F.3d 805, 813 (2d Cir.1996); see also West v. Jutras, 456 F.2d 1222, 1227 (2d Cir.1972).
 
 CONCLUSION
 
 47
 In light of the foregoing, we conclude that the district court abused its discretion in refusing to grant a new trial on the issue of damages. We vacate that portion of the judgment and remand for a new trial solely on the question of damages. The district court may in its discretion offer Bracey the option of accepting a remittitur of the portion of the damages award found to be excessive. With respect to all other issues before us, we affirm.
 
 
 48
 Each party shall bear his or its own costs.
 
 
 
 Notes:
 
 
 *
 The Honorable John R. Gibson of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The record does not disclose whether the complaint led to further action beyond an investigation by the DCF
 
 
 [2]
 Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.... 28 U.S.C. § 1441(a)
 
 
 [3]
 Section 31-51q provides in pertinent part:
 Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3 [Right of religious liberty], 4 [Liberty of speech and the press] or 14 [Right to assemble and petition] of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages.
 
 
 [4]
 The Board asserts correctly that it also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) before trial began. Because we ultimately conclude that the motion was meritless, its timing is of no moment
 
 
 [5]
 Because we conclude below that Congress created a private right of action for violations of the United States Constitution of the sort alleged by Bracey, we need not decide whetherMerrell Dow requires Congress to have done so in order to conclude that the district court had jurisdiction over the state claim here.
 
 
 [6]
 Article First, Section 4 of the Connecticut State Constitution reads:
 Liberty of speech and the press
 Sec. 4. Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty.
 
 
 [7]
 The Connecticut Superior Court observed in an unreported opinion that "[t]he first step in analyzing a claim under General Statutes § 31-51q is to determine whether the rights exercised fall under the protection of the first amendment of the United States constitution or section ... 4 ... of the Connecticut constitution."Lebow v. Am. Chem. & Ref. Co., No. 112554, 1994 WL 411331, at *4, 1994 Conn.Super. LEXIS 1911, at *11 (Conn.Super.Ct. July 29, 1994); accord D'Angelo v. McGoldrick, No. CV 93 0063904, 1995 WL 476843, at *1, 1995 Conn.Super. LEXIS 2305, at *3 (Conn.Super. Ct. Aug 3, 1995) (citing Lebow), aff'd, 239 Conn. 356, 685 A.2d 319 (1996).
 
 
 [8]
 Even if we did not decide this issue on procedural grounds, we doubt that the Board would prevail on the substantive argument. A motion for judgment as a matter of law should only be granted if "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture."Stratton v. Dep't for the Aging, 132 F.3d 869, 878 (2d Cir.1997) (citation and internal quotation marks omitted). There appears to have been sufficient evidence proffered at trial for a reasonable juror to conclude that the superintendent and the Board knew about Bracey's statements and that Bracey's termination resulted at least in significant part therefrom.
 
 
 [9]
 "The district court has authority to enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial, ... where the award is intrinsically excessive in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error."Kirsch v. Fleet St., Ltd., 148 F.3d 149, 165 (2d Cir.1998) (citation and internal quotation marks omitted) (quoting Trademark Research Corp. v. Maxwell Online, Inc., 995 F.2d 326, 337 (2d Cir.1993)).